UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,                                Case No. 11-20493

vs.                                              HON. MARK A. GOLDSMITH

DONNELL DEMON JACKSON,

       Defendant.
_____/

**OPINION & ORDER
DENYING DEFENDANT'S MOTION FOR COMPASSIONATE
RELEASE (Dkt. 399)**

Defendant Donnell Jackson, 47 years old, pleaded guilty to one count of conspiracy to distribute heroin and cocaine, in violation of 21 U.SC. §§ 841(a)(1) and 846. Plea Agreement (Dkt. 171). Jackson was sentenced to 210 months' imprisonment. Judgment (Dkt. 256) (imposing 216-month sentence), as amended by 6/21/16 Order (Dkt. 322) (reducing sentence to 210 months).[1] Jackson is currently incarcerated at the Fort Dix Federal Correctional Institution (FCI Fort Dix), and his projected release date is June 26, 2026.

On May 1, 2020, Jackson filed a motion for compassionate release (Dkt. 364), which the Court denied (Dkt. 366). On March 16, 2021, Jackson filed a new motion for compassionate release (Dkt. 391). Because Jackson requested appointment of counsel in connection with this motion, the Court entered an order appointing counsel (Dkt. 393) and denied Jackson's motion for compassionate release without prejudice, directing Jackson to refile the motion through his newly appointed counsel (Dkt. 392).

---

[1] Jackson was originally sentenced by the Honorable John Corbett O'Meara. This matter was reassigned to the undersigned on September 25, 2019.

On June 2, 2021, Jackson filed the instant motion for compassionate release through counsel (Dkt. 399).² He argues that his health conditions—asthma, obesity, Type 2 diabetes, and hyperlipidemia (high cholesterol)—place him at higher risk of suffering severe illness from COVID-19. He contends that his fear of contracting the virus is legitimized by the fact that the vaccine is not 100% effective as well as by an alleged current outbreak of COVID-19 cases at FCI Fort Dix. He also suggests an additional reason for release—worsened prison conditions during lockdown. The Government argues that Jackson's fear of contracting COVID-19 is a non-compelling reason for release in light of the fact that he was offered but declined a COVID-19 vaccine (Dkt. 403). Jackson did not file a reply, and the deadline to do so has now expired.

The Court agrees with the Government's position that Jackson has failed to show an extraordinary and compelling reason for release. Further, the § 3553(a) factors do not support release. Accordingly, the Court denies Jackson's motion.³

## I. DISCUSSION

The First Step Act (FSA) modified the statute concerning the compassionate release of federal prisoners, 18 U.S.C. § 3582(c), such that district courts may entertain motions filed by

---

² Jackson asks the Court to release him immediately or, in the alternative, to transfer him to home confinement. To the extent that Jackson seeks home confinement under the Coronavirus Aid, Relief, and Economic Security Act, § 12003(b)(2), Pub. L. No. 116-136, 134 Stat. 281, 516 (2020), his motion is denied because the Bureau of Prisons (BOP) has sole discretion to grant such relief. See United States v. Mattice, No. 20-3668, 2020 WL 7587155, at *2 (6th Cir. Oct. 7, 2020). However, the Court may consider Jackson's request for home confinement under 18 U.S.C. § 3582(c). Courts granting compassionate release pursuant to that statute may convert a defendant's remaining sentence term to a term of supervised release and impose an initial term of home detention. See, e.g., United States v. Amarrah, 458 F. Supp. 3d 611, 620–621 (E.D. Mich. 2020). Jackson' request for home confinement is denied for the same reasons that his request for immediate release is denied.

³ Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2).

incarcerated defendants seeking to reduce their sentences. United States v. Ruffin, 978 F.3d 1000, 1003–1004 (6th Cir. 2020).[4] Before granting a compassionate-release motion, a district court must engage in a three-step inquiry: (i) the court must find that "extraordinary and compelling reasons warrant [a sentence] reduction," (ii) it must ensure "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," and (iii) it must "consider[] all relevant sentencing factors listed in 18 U.S.C. § 3553(a)." United States v. Jones, 980 F.3d 1098, 1101 (6th Cir. 2020) (citing 18 U.S.C. § 3582(c)(1)(A)). If all of those requirements are met, the district court "may reduce the term of imprisonment," but it need not do so. 18 U.S.C. § 3582(c)(1)(A).

Regarding the first step of the inquiry, the Sixth Circuit has held that, with respect to motions for compassionate release filed by imprisoned individuals, "extraordinary and compelling" reasons are not limited to those set forth in U.S.S.G. § 1B1.13. Jones, 980 F.3d at 1109. It has further held that "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the [FSA], district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." Id.

A. Extraordinary and Compelling Circumstances

With respect to motions for compassionate release premised on a defendant's fear of contracting COVID-19, the Sixth Circuit has held that "generalized fears of contracting COVID-19, without more, do not constitute a compelling reason" to grant compassionate release. United States v. Ramadan, No. 20-1450, 2020 WL 5758015, at *2 (6th Cir. Sept. 22, 2020). Rather, a

---

[4] An incarcerated defendant must comply with the mandatory exhaustion requirements of § 3582(c) before filing a motion for compassionate release. Here, the Government concedes that Jackson has satisfied the exhaustion requirement. See Resp. at 3.

3

defendant must point to specific conditions that create a higher risk that the defendant will contract the virus. To determine whether a defendant's specific conditions render him particularly vulnerable to contracting COVID-19, courts generally consult the guidance on high-risk factors published by the Centers for Disease Prevention and Control (CDC). See United States v. Elias, 984 F.3d 516, 521 (6th Cir. 2021).

Jackson argues that he fears his health conditions render him vulnerable to COVID-19. Based on this fear, Jackson would have presumably jumped at the opportunity to be vaccinated. However, when Jackson was offered the Moderna vaccine on March 9, 2021, he refused it, as reflected by a form signed by Jackson. See COVID-19 Vaccine Form (Dkt. 405). Jackson's refusal of the vaccine renders his concerns about COVID-19 non-compelling. As another court within this district incisively explained:

> [A] [d]efendant does not convincingly establish that his conditions are exceptional and demand immediate release when he intentionally prevents prison officials from mitigating dangers to his health and safety. 18 U.S.C. § 3582(c)(1)(A). A prisoner will not be heard to complain of the risk of severe illness while he simultaneously avoids basic, sensible precautionary measures such as vaccination. Allowing a prisoner to qualify for compassionate release in the face of his refusal to receive a COVID-19 vaccine would serve to discourage prisoners from becoming vaccinated. This court is exceedingly hesitant to provide prisoners an incentive to increase their risk of contracting COVID-19 and developing severe symptoms. Such a result would be plainly counter-productive and dilute the ameliorative purposes of compassionate release.

United States v. Csiki, No. 19-20256, 2021 WL 1884702, at *2 (E.D. Mich. May 11, 2021); see also United States v. MacGregor, No. 15-cr-20093, 2021 WL 1378786, at *1 (E.D. Mich. Apr. 12, 2021) (holding that a prisoner "failed to show that there were extraordinary and compelling reasons justifying his release because a COVID-19 vaccine had been offered to him, and he declined to take the vaccine"); United States v. Toney, No. 17-20184, 2021 WL 1175410, at *1 (E.D. Mich.

Mar. 29, 2021) ("Courts in this circuit have consistently refused to find extraordinary and compelling medical circumstances when a defendant declines the COVID-19 vaccine.").

Jackson puts forth three arguments as to why his decision to forego vaccination should not be held against him. Each reason is addressed and rejected in turn. After, the Court addresses and rejects Jackson's related argument—that the "outbreak" of COVID-19 cases at FCI Fort Dix justifies his release. Finally, the Court addresses and rejects Jackson's argument that the difficulty of prison life during lockdown justifies granting him release.

First, Jackson argues that "there is no evidence that the vaccine will totally prevent contracting the disease . . . ." Mot. at 15. True, the vaccine is not 100% effective. But according to the CDC, the vaccine reduces the risk of COVID-19 among people who are fully vaccinated "by 90 percent or more."[5] Further, regarding people who are vaccinated but still get COVID-19, the vaccine has been shown to "provide protection against severe illness and hospitalization among people of all ages eligible to receive [it]." Id. Given the vaccine's high efficacy, if Jackson had taken the vaccine when it was offered to him, he would have greatly mitigated his fear of contracting the virus and suffering severe illness. His argument about the vaccine's efficacy is, therefore, entirely unpersuasive.

Second, Jackson argues that "there are new variant strrains of the virus on the rise, which may be resistant to the vaccine." Mot. at 15. While it is true that new variants—particularly the Delta variant—are on the rise, the CDC states that "[c]urrent data suggest that COVID-19 vaccines authorized for use in the United States offer protection against most variants currently spreading

---

[5] CDC, "COVID-19 Vaccines Work," https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html [https://perma.cc/WF6S-APG5].

in the United States."[6] Thus, Jackson could have mitigated his fear of COVID-19 variants by getting vaccinated. Accordingly, the Court will not grant Jackson release based on his alleged fear of variants. See, e.g., United States v. Goston, No. 15-20694, 2021 WL 872215, at *3 (E.D. Mich. Mar. 9, 2021) (noting that "the CDC's current recommendation is that antibodies generated through vaccination with currently authorized vaccines recognize these variants" and declining to grant release based on a prisoner's speculation that the vaccine might not protect against variants) (punctuation modified).

Third, Jackson's counsel represents that Jackson "has indicated that he has not taken the vaccine because there is an unspecified blood condition in his family that prevents him from receiving the vaccine, due to unknown side effects." Mot. at 15. Jackson's medical records reflect that in 2018, he had an "[a]bnormal finding of blood chemistry, unspecified"; the abnormality is described as "mildly high TSH." BOP Medical Records at PageID.2164 (Dkt. 400-2).[7] However, Jackson cites no medical authority to support his position that people with such a health condition cannot be vaccinated. And in fact, the CDC currently recommends that the vaccine "can be administered to people with underlying medical conditions who have no contraindications to vaccination."[8] The CDC considers a history of the following to be a contraindication to vaccination: (i) "[s]evere allergic reaction (e.g., anaphylaxis) after a previous dose or to a component of the COVID-19 vaccine"; and (ii) "[i]mmediate allergic reaction of any severity to a

---

[6] CDC, "COVID-19 Vaccines Work," https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html [https://perma.cc/WF6S-APG5].

[7] TSH—thyroid-stimulating hormone—influences the body's metabolic rate.

[8] CDC, "Interim Clinical Considerations for Use of COVID-19 Vaccines Currently Authorized in the United States," https://www.cdc.gov/vaccines/covid-19/clinical-considerations/covid-19-vaccines-us.html#underlying-conditions [https://perma.cc/Z6SP-5NYC].

6

previous dose or known (diagnosed) allergy to a component of the vaccine." Id. Jackson does not contend that he has a history of such allergic reaction. As a result, Jackson's unspecified blood condition does not convert his non-compelling reason for release into a compelling one.

Relatedly, Jackson suggests that the "outbreak" of COVID-19 cases at FCI Fort Dix justifies his fear of contracting COVID-19. Jackson is mistaken that there is currently an outbreak at this institution. In fact, there are currently no active cases of COVID-19 inmates and only one active staff case at FCI Fort Dix.[9] Further, of the 2,879 inmates at FCI Fort Dix,[10] 1,740 have been fully vaccinated.[11] This percentage of fully vaccinated inmates (60.4%) is actually slightly higher than the percentage of fully vaccinated adults in the United States (60.2%).[12] Thus, if anything, the relatively safe environment at FCI Fort Dix compounds the non-compelling nature of Jackson's alleged fear of contracting COVID-19 while incarcerated.

Finally, the Court briefly addresses Jackson's argument that lockdown has created "harsh" conditions of confinement by, for instance, reducing the availability of programming opportunities. Mot. at 14. This is neither an extraordinary nor compelling reason for release. Nearly all Americans experienced some sort of lockdown during the pandemic. By definition, during a lockdown, one's ability to move about and participate in events with others is restricted. Lockdown and related efforts, such as social distancing, were necessary steps to minimize the

---

[9] BOP, "COVID-19 Cases," https://www.bop.gov/coronavirus/ [https://perma.cc/8DCX-VQN2].

[10] BOP, "FCI Fort Dix," https://www.bop.gov/locations/institutions/ftd/ [https://perma.cc/KNG2-SFP3].

[11] BOP, "COVID-19 Vaccine Implementation," https://www.bop.gov/coronavirus/ [https://perma.cc/8DCX-VQN2].

[12] CDC, "COVID-19 Vaccinations in the United States," https://covid.cdc.gov/covid-data-tracker/#vaccinations [https://perma.cc/88NH-8B3Q].

7

spread of the virus. Presumably, programming availability at FCI Fort Dix—as well as other prisons across the nation—was reduced during the pandemic to decrease crowding. To the extent that Jackson suggests that such COVID-19 prevention efforts entitle him to release, this argument only serves to undercut his position that he fears contracting the virus while incarcerated.

For these reasons, Jackson has not shown extraordinary and compelling reasons for release. Even if Jackson had shown the existence of extraordinary and compelling circumstances, his release would still be unwarranted based on the § 3553(a) factors, as explained below.

### B. Section 3553(a) Factors

The § 3553(a) factors weigh against granting Jackson release. Before granting a sentence reduction under the FSA, the Court must consider the § 3553(a) factors, which include the nature and circumstances of a defendant's offenses, the seriousness of the offenses, the need to promote respect for the law, and the need to protect the public from further crimes by the defendant.

This is not Jackson's first drug offense. Jackson was previously sentenced to 60 months' imprisonment and four years' supervised release for conspiracy to distribute cocaine. While Jackson was still on supervised release for that offense, he began his involvement in the instant drug conspiracy. The objective of this conspiracy—of which Jackson was recognized as the leader—was to move large quantities of drugs, such as heroin and cocaine, from Mexico to Detroit. Jackson maintained a "stash house" to store drugs and defended it with firearms. He also took steps to conceal evidence from law enforcement officials, on one occasion directing a co-conspirator to retrieve drugs that authorities had missed during a search. While incarcerated, Jackson has committed several infractions, including three infractions since 2018. See Inmate Discipline Data (Dkt. 2210).

Jackson's crimes are undoubtedly serious. Heroin is categorized as a Schedule I drug because there is no accepted medical use for it and it has a high potential for abuse. Likewise, Cocaine is categorized as a Schedule II controlled substance due to its dangerousness, high potential for abuse, and ability to cause severe psychological or physical dependence among users. The circulation of addictive drugs such as these presents a grave danger to the community's health. Jackson went to considerable lengths to distribute these drugs in Detroit without detection by law enforcement, including using a stash house that he protected with firearms and ordering a co-conspirator to retrieve drugs missed during a search. These efforts highlight Jackson's notable dangerousness to the public's wellbeing.

Given Jackson's history of drug offenses, his role as the leader in the instant drug-trafficking conspiracy, and the difficulty in deterring him from committing additional crimes—as evidenced by Jackson's infractions while incarcerated as well as the fact that after receiving a 60-month sentence for the earlier drug conspiracy, Jackson committed the instant drug offense while on supervised release—there is a real risk that if released now, Jackson would commit additional drug crimes. Releasing Jackson now would, therefore, jeopardize the safety of the public. It would also fail to promote respect for the law.

For these reasons, the § 3553(a) factors weigh against granting Jackson's motion.

## II. CONCLUSION

For the reasons stated above, Jackson's motion for compassionate release (Dkt. 399) is denied.

SO ORDERED.

Dated: August 5, 2021                  s/Mark A. Goldsmith
   Detroit, Michigan               MARK A. GOLDSMITH
                                                   United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 5, 2021.

                                            s/Karri Sandusky
                                            KARRI SANDUSKY
                                            Case Manager